**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0640-23

JOHN WILLIAM MYERS,

     Plaintiff-Appellant,

v.

GNY MUTUAL INSURANCE
COMPANY and NJM INSURANCE
COMPANY,

     Defendants-Respondents.

_____

Argued January 21, 2025 – Decided August 11, 2025

Before Judges Gummer, Jacobs, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1444-22.

John William Myers, appellant, argued the cause pro se.

Catherine P. O'Hern argued the cause for respondent GNY Mutual Insurance Company (Schenck, Price, Smith & King, LLP, attorneys; Michael J. Marotte, of counsel; Catherine P. O'Hern, on the brief).

Daniel J. Pomeroy argued the cause for respondent NJM Insurance Company (Pomeroy, Heller, Ley,

DiGasbarro & Noonan, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

PER CURIAM

In this insurance-coverage case, plaintiff John W. Myers appeals an order dismissing his complaint with prejudice against defendant NJM Insurance Company (NJM) and an order denying his motion to reconsider orders dismissing defendant NJM and defendant GNY Mutual Insurance Company (GNY). Based on our de novo review of the dismissal order and perceiving no abuse of discretion in the denial of the reconsideration motion, we affirm.

I.

On December 9, 2022, plaintiff filed in the Law Division a 332-paragraph verified complaint, naming GNY and NJM as defendants. He referenced but did not name as a defendant Society Hill at Bernards 1 Condominium Association, Inc. (the Association). He described the Association as "a non-profit corporation whose members are the owners of 444 units in a planned community with common areas and recreational facilities . . . ." According to plaintiff, he and his wife purchased in 2013 a townhouse that was part of the Association. He described GNY as "the insurance carrier for the Association's Commercial General Liability (CGL) policy which was endorsed to insure members including [plaintiff]." He described NJM as "the insurance carrier for

2

[plaintiff's] HO6 Condo Owners Insurance Policy effective since 4/26/2013." He asserted both policies were "All Risks" policies. He claimed defendants had wrongfully denied his "claims for legal defense, indemnification, and reimbursement stemming from multiple municipal court trials and events related to [Stoneley v. Myers,] Docket No. SOM-L-1520-16 [(the Underlying Lawsuit)]." In the six-count complaint, plaintiff asserted causes of action for a declaratory judgment regarding various aspects of defendants' policies and his alleged entitlement to coverage under them, breach of contract, and breach of the implied covenant of good faith and fair dealing. In addition to the declaratory judgments, plaintiff sought monetary damages, including punitive damages.

Plaintiff submitted with his complaint a certification he expressly "incorporated" into the complaint. He made in the complaint and certification extensive factual assertions regarding the parties, the Association, the policies, members of the Association's Board of Trustees, the Association's property manager, the Underlying Lawsuit, and certain municipal-court complaints filed against plaintiff. He attached to the complaint and the incorporated certification several exhibits, including copies of the NJM policy, the complaint in the

3                                                                                      A-0640-23

Underlying Lawsuit, and certifications submitted in connection with the Underlying Lawsuit.

The plaintiffs in the Underlying Lawsuit were Association Board members Bruce Stoneley, Hilary Carmen, Valerie Whyte, and Nannette Carriere; the Association; Taylor Management Company (TMC), which was the managing agent for the Association, and Terri L. Reddell, who was a TMC employee serving as the Association's site manager. Those plaintiffs commenced the Underlying Lawsuit by filing on December 2, 2016, a verified complaint and an application for an order to show cause with civil restraints. They named plaintiff as the sole defendant in that case. They alleged he had intimidated one plaintiff by leaning over her desk in a threatening manner, blocking her exit, and refusing to leave until she told him multiple times she would call the police; intimidating a Board member by "getting in his face and pinning him against a truck while screaming vile and personal insults at him"; disrupting the Annual Meeting of the members, resulting in defendant's subsequent arrest; and otherwise threatening, insulting, cursing, and screaming at the plaintiffs.

The plaintiffs in the Underlying Lawsuit pleaded three causes of action. In the first count, which was entitled INTENTIONAL INTERFERENCE WITH

A-0640-23

CONTRACTUAL RELATIONS, the plaintiffs alleged plaintiff had "wantonly, willfully and intentionally disrupted the ongoing contractual relationships between" Reddell and TMC, TMC and the Association, and the Association and its membership. In the second and third counts, they alleged plaintiff had assaulted and harassed the individual plaintiffs. In addition to monetary damages, the plaintiffs sought an injunction prohibiting plaintiff from contacting Board members, contacting TMC members except in case of an emergency, and requiring him contact the Association's counsel to address housing and maintenance issues. On January 20, 2017, plaintiff filed an answer with a counterclaim.

Plaintiff alleged in the complaint in this case that on December 6, 2018, he had "notified NJM of [his] claim over the phone regarding" the NJM policy. The NJM policy that was in effect on the dates at issue in the Underlying Lawsuit provided "Unit-Owners Coverage," which included coverage for certain risks to the covered property, the personal possessions of the policyholders, and loss of use as well as personal liability in the amount of $100,000 for "[e]ach [o]ccurence." Section I of the policy described what coverage the policy provided "for direct physical loss to the [insured] property"; section II described

A-0640-23

the "liability coverages" under the policy.  Section II, subsection A, which was entitled "Coverage E – Personal Liability," provided:

> If a claim is made or a suit is brought against an <u>insured</u> for damages because of <u>bodily injury</u> or <u>property damage</u> caused by an <u>occurrence</u> to which this coverage applies, [NJM] will:
>
> 1.  Pay up to [its] limit of liability for damages for which an insured is legally liable; and
>
> 2. Provide a defense at [its] expense by counsel of [its] choice, even if the suit is groundless, false or fraudulent. . . .

The NJM policy defined "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:  a.  [b]odily injury or b.  [p]roperty damage."  The policy defined "[b]odily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results."  It defined "[p]roperty damage" as "physical injury to, destruction of, or loss of use of tangible property."

Section II of the NJM policy also described specific exclusions from coverage.  Section II, Exclusion E, paragraph 1, which was entitled "Expected Or Intended Injury," provided that Coverage E did not apply to:

6

A-0640-23

Bodily injury or property damage, with respect to all insureds, which is expected or intended by an insured even if the bodily injury or property damage:

 a. Is of a different kind, quality or degree than initially expected or intended; or

 b. Is sustained by a different person, entity, real or personal property than initially expected or intended.

However, this Exclusion "E.1." does not apply to bodily injury resulting from the use of reasonable force by an insured to protect persons or property.

Under the terms of the policy, NJM had "no duty to provide coverage" for an occurrence under the policy if the insured's "failure to comply" with certain specified "duties [wa]s prejudicial" to NJM. Those duties included "[g]iv[ing] written notice to [NJM] as soon as is practical," "[c]ooperat[ing] with [NJM] in the investigation, settlement or defense of any claim or suit," and "[p]romptly forward[ing] to [NJM] every notice, demand, summons or other process relating to the occurrence."

In a December 13, 2018 letter, NJM advised plaintiff the NJM policy did not provide coverage for his claim about the Underlying Lawsuit and, accordingly, NJM had denied his claim. After quoting from the policy's definitions and Coverage E in Section II, NJM explained:

7

Based on the allegations in the [c]omplaint [in the Underlying Lawsuit], this matter involves allegations of cursing, screaming, refusing to leave, intimidating and disrupting various meetings and work requirements of the Board/Association. This type of behavior would not be considered an accident. Even if the matter was considered an occurrence, the alleged harm is not considered property damage or bodily injury as defined in the policy. The damages alleged are that you are disrupting the purpose of the Association and intimidating at least one employee. There have been no allegations against you for property damage or bodily injury.

After quoting from the Exclusions portion of Section II, NJM stated:

Your policy excludes bodily injury or property damage that is expected or intended even if the harm is different than expected. The allegations in the [c]omplaint are for intentional acts such as interference with contractual relations, assault, and harassment. Pursuant to the policy language quoted above, expected or intended injury is not covered by the homeowners insurance policy issued to you. For that reason, NJM will not provide you with defense or indemnification for the allegations of the [c]omplaint.

NJM also pointed out plaintiff had "not notif[ied] NJM of this action against [him] until more than two years after the [s]ummons & [c]omplaint w[ere] filed" and, thereby, had failed to fulfill his obligations under the policy. In a December 28, 2018 letter, NJM advised plaintiff its Internal Appeals Panel had considered his in-house appeal of the denial of his claim and agreed with the initial determination to deny the claim. Noting that "[a]ccording to the New Jersey

8

Courts website, the discovery end date was May 15, 2018, and the matter is currently scheduled for trial on January 14, 2019," NJM explained the Panel's finding that plaintiff had prejudiced NJM's ability to defend the matter and, even if he had provided timely notice of the Underlying Lawsuit, the policy did not provide liability coverage for the claims asserted in the complaint in that lawsuit.

Plaintiff alleged in the complaint that on January 28, 2019, he wrote a "letter to notify GNY of [his] claim and requested legal defense until the competition [sic] of the suit and reimbursement for all legal expenses . . . ." According to plaintiff, on February 4, 2019, he received a letter from GNY disclaiming coverage. Plaintiff asserted he had replied to the denial letter and, on February 19, 2019, received a letter from GNY's Internal Claim Review Committee advising him GNY had reviewed his appeal and concluded it correctly denied his claim. Although plaintiff had attached copies of the GNY policy and correspondence as exhibits to his complaint, he did not include copies of those exhibits in his appellate appendix.

After plaintiff filed his Law Division complaint, defendants moved to dismiss the complaint with prejudice pursuant to Rule 4:6-2(e) for failure to state a claim. Plaintiff opposed the motions. After hearing argument, the court granted the motions as memorialized in orders it entered on August 7, 2023. In

9

the statement of reasons attached to the order granting NJM's motion, the court held the conduct by plaintiff alleged in the complaint in the Underlying Lawsuit did not constitute an "accidental occurrence" under the policy, was not covered under the policy, and was excluded under the policy's expected or intended exclusion.[1]  In the statement of reasons attached to the order granting GNY's motion, the court found plaintiff was not a named insured under the GNY policy and that the allegations against him in the complaint in the Underlying Lawsuit arose out of his personal conduct, not out of his ownership, maintenance nor repair of the common areas.  Consequently, the court concluded his alleged conduct was not covered by the GNY policy.

Plaintiff moved for reconsideration of the dismissal orders.  Defendants opposed the motion.  In a decision it placed on the record after hearing argument

---

[1]  For reasons unclear to this court, the trial court advised the parties during argument it was "not going to decide this motion based on . . . the timeliness of notice."  However, NJM had no duty to provide coverage to plaintiff if his failure to give NJM written notice, cooperate with NJM in the investigation or defense of any suit, and "[p]romptly forward to [NJM] every related notice, demand, summons or other process . . . ."  Plaintiff advised NJM of the Underlying Lawsuit by telephone on December 6, 2018, more than two years after the complaint and order to show cause application in the Underlying Lawsuit was filed, twenty-two months after he filed his answer and counterclaim, six months after the discovery period in the Underlying Lawsuit had ended, and a little over a month before the scheduled trial.  Those undisputed facts bespeak of a prejudicial failure by plaintiff to comply with his obligations under the policy.

A-0640-23

on October 11, 2023, the court concluded plaintiff had argued "nothing new," was making "exactly the same argument," and, thus, had not met the standard for reconsideration. The court entered an order denying the motion that day.

On October 30, 2023, plaintiff filed a notice of appeal, stating he was "[a]ppealing [o]rders dated 8-7-23 and 10-11-23 in favor of NJM." In the case information statement (CIS) he filed with his notice of appeal, he identified the following as the orders from which he was appealing: "08/07/2023 [o]rder dismissing plaintiff's complaint against NJM" and "10/11/2023 [o]rder denying plaintiff's motion for reconsideration." Asked on the CIS to "[g]ive a brief statement of the facts and procedural history," plaintiff responded:

> This is a liability insurance contract dispute whereby [p]laintiff alleges that facts known by [d]efendants trigger insurance coverage including legal defense and indemnification. Plaintiff filed suit on 12/9/22 seeking declaratory action. On 3/20/23, [d]efendant NJM filed [a] motion to dismiss which was granted on 8/7/23. Plaintiff subsequently filed [a] motion for reconsideration on 8/28/23 which was denied by the trial court on 10/11/23.

Plaintiff later moved to amend his notice of appeal and CIS to add GNY. We denied that motion on May 20, 2024. Accordingly, in this appeal, we consider the August 7, 2023 order granting NJM's motion to dismiss and the October 11, 2023 order denying plaintiff's motion for reconsideration. See R.

11

2:5-1(f)(2)(ii) (requiring appellant in a civil action to identify in the notice of appeal the judgment or decision that is the subject of the appeal); Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 n.1, (App. Div. 2002) (finding "[a]n appellant . . . proceeds at his or her peril by insufficiently completing the notice of appeal or CIS"); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1 (2025) ("Consequently, if the notice designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration that is reviewed.").

## II.

Under Rule 4:6-2(e), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." The rule tests "the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "To defeat a Rule 4:6-2(e) motion, a plaintiff does not have to prove his or her case but must establish the complaint contains 'allegations which, if proven, would constitute a valid cause of action.'" Neuwirth v. State, 476 N.J. Super. 377, 389-90 (App. Div. 2023) (quoting Kieffer v. High Point Ins. Co., 422 N.J. Super. 38, 43 (App. Div. 2011)). "[I]f the complaint states no claim that supports relief, and discovery will not give

12

rise to such a claim, the action should be dismissed." AC Ocean Walk, LLC v. Am. Guarantee Liab. Ins. Co., 256 N.J. 294, 311 (2024) (alterations in original) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman, & Stahl, P.C., 237 N.J. 91, 108 (2019)).

"A motion to dismiss pursuant to Rule 4:6-2(e) ordinarily is granted without prejudice." Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009). "However, there are times when a dismissal with prejudice is mandated, such as when the facts are 'palpably insufficient to support a claim upon which relief can be granted' and when 'discovery would not give rise to a successful claim.'" Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 225-26 (App. Div. 2024) (quoting Mac Prop. Grp. LLC. v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022)); see also Nostrame v. Santiago, 213 N.J. 109, 128 (2013) (finding dismissal with prejudice pursuant to Rule 4:6-2(e) was appropriate where the plaintiff had "no further facts to plead" and allowing the case to proceed would subject the parties to "a mere fishing expedition").

"We review a decision on a Rule 4:6-2(e) dismissal motion 'de novo, without deference to the judge's legal conclusions.'" Neuwirth, 476 N.J. Super. at 389 (quoting McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 415 (App.

A-0640-23

Div. 2020)). We apply the same standard the trial court applies. <u>AC Ocean Walk</u>, 256 N.J. at 310. In evaluating the motion, we consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." <u>Id.</u> at 311 (quoting <u>Myska v. N.J. Mfrs. Ins. Co.</u>, 440 N.J. Super. 458, 482 (App. Div. 2015)). We accept as true the facts alleged in the dismissed pleading, granting plaintiff "every reasonable inference of fact." <u>Major v. Maguire</u>, 224 N.J. 1, 26 (2016) (quoting <u>Printing Mart</u>, 116 N.J. at 746).

Our review of the order granting NJM's dismissal motion is guided by "[l]ong-standing legal principles" regarding insurance policies. <u>Rodriguez v. Shelbourne Spring, LLC</u>, 259 N.J. 385, 394 (2024). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." <u>Flomerfelt v. Cardiello</u>, 202 N.J. 432, 441 (2010). The interpretation of an insurance policy is a question of law for the court to decide. <u>Wear v. Selective Ins. Co.</u>, 455 N.J. Super. 440, 453 (App. Div. 2018). When reviewing a decision about an insurance policy, "[w]e interpret the insurance policy terms de novo." <u>Rodriguez</u>, 259 N.J. at 395.

A court should interpret an insurance policy "'according to its plain and ordinary meaning,' with any ambiguities 'resolved in favor of the insured.'" <u>Id.</u>

at 395 (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "But courts cannot 'engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased.'" Ibid. (quoting AC Ocean Walk, 256 N.J. at 312) (internal quotation marks omitted).

Generally, exclusionary clauses in insurance policies are "presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" Flomerfelt, 202 N.J. at 441 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). Exclusions are strictly construed against the insurer; however, courts are cautioned against "disregard[ing] the 'clear import and intent' of a policy's exclusion." Id. at 442 (quoting Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J. Super. 29, 41 (App. Div. 1973), aff'd o.b., 65 N.J. 152 (1974)).

"A duty to defend arises from an insurer's contractual obligation under the language of the insurance policy." Rodriguez, 259 N.J. at 394. "Specifically, '[a]n insurer is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy.'" Ibid. (alteration in original) (quoting Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 79 (2011)).

15

"An insurer's duty to defend is broader than its duty to indemnify."  Ibid. "A duty to defend 'comes into being when the complaint states a claim constituting a risk insured against,' regardless of the claim's likelihood of success." Ibid. (quoting Voorhees, 128 N.J. at 173).  The duty to defend applies only if the claims at issue "comprehend[ ] an injury which may be within the policy."  Ibid. (alteration in original) (quoting Abouzaid, 207 N.J. at 80). "Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action, which, if sustained, will impose a liability covered by the policy." Ibid. (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954)).  "Therefore, '[w]hether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy.'" Ibid. (quoting Voorhees, 128 N.J. at 174); see also Wear, 455 N.J. Super. at 453 ("the duty of an insurer to defend is generally determined by a side-by-side comparison of the policy and the complaint").  The duty to defend "is triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." Wear, 455 N.J. Super. at 453.  "But an insurer has no duty to defend against a claim, 'which measured by the pleadings, even

A-0640-23

if successful, would not be within the policy coverage.'" Rodriguez, 259 N.J. at 394 (quoting Danek, 28 N.J. Super. at 77).

Applying those principles in our de novo review of the plain and unambiguous policy terms, we conclude the claims in the Underlying Lawsuit are not covered under the personal-liability provision in Section II of the NJM policy. Plaintiff's complaint is premised on the NJM policy being an "All Risks" policy. But it isn't. "All-risks" insurance policies "create[] a 'special type of insurance extending to risks not usually contemplated, and recovery under the policy will generally be allowed . . . , in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage.'" Merck & Co. v. Ace Am. Ins. Co., 475 N.J. Super. 420, 435 (App. Div. 2023) (omission in original) (quoting Victory Peach Grp., Inc. v. Greater N.Y. Mut. Ins. Co., 310 N.J. Super. 82, 87 (App. Div. 1998)).

In contrast, the NJM policy provides certain specified coverage, including personal-liability coverage to individuals for "damages because of bodily injury or property damage caused by an occurrence . . . ." As those highlighted terms are defined in the policy, the policy does not provide coverage for intentional-interference, assault, and harassment claims made in the Underlying Lawsuit.

17

The claims as pleaded in the complaint in the Underlying Lawsuit make clear the plaintiffs premised their case not on accidents caused by plaintiff but on his intentional acts and his intent to cause the harm alleged.

In count I, the plaintiffs alleged plaintiff had intentionally interfered with contractual relations. They did not assert his intentional interference caused any bodily injury or property damage, which was defined as "physical injury to, destruction of, or loss of use of tangible property." In count II, the plaintiffs alleged plaintiff had committed acts of assault. "A person is subject to liability for an assault if (a) s/he acts intending to cause a harmful or offensive contact with the person of the plaintiff, or an imminent apprehension of such a contact, and (b) the plaintiff is thereby put in such imminent apprehension." Model Jury Charges (Civil), 3.10(A), "Assault and Battery" (rev. Mar. 2015) (emphasis added). Thus, to prevail on that count, the plaintiffs had to prove plaintiff "intend[ed] to cause a harmful or offensive contact." In the third count, the plaintiffs alleged plaintiff had committed acts of harassment. "Harassment requires the defendant act with the purpose of harassing the victim." D.M.R. v. M.K.G., 467 N.J. Super. 308, 323 (App. Div. 2021). To prevail on that claim, the plaintiffs again had to prove plaintiff had the intent to harass.

A-0640-23

Because the allegations in the complaint in the Underlying Litigation, if sustained, would not impose a liability covered by the policy, NJM does not have a duty to provide coverage or to provide a defense. Rodriguez, 259 N.J. at 394; see also N.J. Mfrs. Ins. Co. v. Vizcaino, 392 N.J. Super. 366, 369 (App. Div. 2007) (finding if the sole claim against the insured was for "intentional assault," insurer "would have no obligation to provide [insured] with a defense"). Accordingly, we affirm the August 7, 2023 order granting NJM's motion to dismiss. See Rodriguez, 259 N.J. at 407 (affirming order granting insurer's motion to dismiss because the underlying case did not involve a covered risk).

We now turn to the denial of plaintiff's reconsideration motion.

> Reconsideration is appropriate only in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of the probative, competent evidence . . . ."
>
> Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations and omissions in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue . . . ." Palombi v. Palombi, 414 N.J.

19

Super. 274, 288 (App. Div. 2010). Our "standard of review on a motion for reconsideration is deferential." Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022); see also Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (applying abuse-of-discretion standard when reviewing an order on a motion for reconsideration). "[T]he magnitude of the error cited must be a game-changer." Castano, 475 N.J. Super. at 78 (alteration in original) (quoting Triffin, 466 N.J. Super. at 466).

In his reconsideration motion, plaintiff did not demonstrate the court had granted defendants' motions to dismiss on a "palpably incorrect or irrational basis" nor that it had failed to "consider, or . . . appreciate the significance of the probative, competent evidence." Thus, plaintiff did not meet the standard for reconsideration. Perceiving no abuse of discretion in the court's decision to deny the motion, we affirm the October 11, 2023 order.

Because we affirmed the August 7, 2023 order based on the lack of coverage, we need not and do not address the parties' arguments regarding the NJM policy's exclusion for expected or intended injury. To the extent we have not expressly addressed any other arguments raised by plaintiff, we have considered them and find they are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

21

A-0640-23